**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ERIN MCKENNA,

Plaintiff,

v.

SANTANDER INVESTMENT SECURITIES, INC., SANTANDER HOLDINGS, USA, INC. and OMAR KARIUKI, in his individual and professional capacities,

Defendants.

Civil Action No.:

**COMPLAINT**

**Jury Trial Demanded**

Plaintiff Erin McKenna ("Plaintiff" or "McKenna"), hereby alleges through her counsel Wigdor LLP, as against Defendants Santander Investment Securities, Inc. ("SIS" or the "Company"), Santander Holdings USA, Inc. (together, "Santander" or the "Bank") and Omar Kariuki, in his individual and professional capacities, (collectively "Defendants") as follows:

## PRELIMINARY STATEMENT

1. The financial services industry is a difficult place for working mothers. There are often few, if any, women at the top. Moreover, big banks perceive working mothers as lacking commitment, distracted by family matters or otherwise too preoccupied to focus on their work. Santander is no exception.

2. Between early 2019 and late 2020, McKenna, a successful fixed income and emerging markets salesperson, was pregnant twice. Each pregnancy was considered high risk. McKenna could, however, perform her job with a simple accommodation: the opportunity to work remotely from home.

3. Initially, Santander granted McKenna's request but then – abruptly and with little reason – rescinded the accommodation, telling McKenna that she would be fired if she did not come to the office.

4. Pregnant and desperate to keep her job, McKenna complied, placing her own health and the health of her unborn child at risk. During this time, McKenna visited the hospital more than half-a-dozen times because of pregnancy complications and gave birth prematurely. Nonetheless, McKenna returned to work after a pregnancy leave.

5. Santander, however, made sure that McKenna suffered professionally. For example, Santander twice cut McKenna's annual bonus and took away most of McKenna's accounts when she returned, forcing her to effectively start over. McKenna was told that she was "lucky" to get even the reduced bonuses.

6. In 2020, McKenna learned she was, once again, pregnant and would need an accommodation. McKenna told Human Resources ("HR") and her boss. Santander promptly fired McKenna.

7. According to Santander, McKenna's job was eliminated as part of a force reduction. In fact, Santander kept a less qualified man who consistently generated substantially less revenue than McKenna. Moreover, and perhaps most remarkably, Santander hired a new employee into McKenna's group – also a man – who did not even have the basic licensing requirements for the job.

## NATURE OF CLAIMS

8. McKenna brings this action to remedy discrimination on the basis of sex and disability and retaliation for requesting a reasonable accommodation, in violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the New York State Human Rights

Law, Executive Law § 290 *et seq.* (the "Executive Law"), and the Administrative Code of the City of New York §8-107 *et seq.* (the "City Law").

**JURISDICTION AND VENUE**

9. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under federal law. This Court has supplemental subject matter jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

**ADMINISTRATIVE PROCEDURES**

11. Plaintiff will file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"). Following the EEOC's issuance of a Notice of Right to Sue, McKenna will seek leave of the Court to further amend the Complaint to add claims under Title VII as amended by the Pregnancy Discrimination Act of 1978 ("PDA") and the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*. ("ADA").

12. Pursuant to City Law § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten days of its filing, thereby satisfying the notice requirements of this action.

13. Plaintiff has complied with any and all other prerequisites to filing this action.

## PARTIES

14. Plaintiff Erin McKenna is a former Senior Vice President at Santander Investment Securities, Inc. At all relevant times, Plaintiff met the definition of an "employee" under all applicable statutes.

15. Defendant Santander Investment Securities, Inc. ("SIS," or the "Company") is a foreign business corporation and a subsidiary of Santander Holdings USA, Inc., with its principal place of business at 45 East 53rd Street, New York, New York 10022, and is duly organized and existing under and by virtue of the laws of the State of Delaware. At all relevant times, SIS has met the definition of an "employer" of Plaintiff under all applicable statutes.

16. Defendant Santander Holdings USA, Inc. (together with SIS, "Santander" or the "Bank") is a foreign business corporation with its principal place of business located at 75 State Street, Boston, Massachusetts 02109, and is duly organized and existing under and by virtue of the laws of the State of Virginia. At all relevant times, Santander has met the definition of an "employer" of Plaintiff under all applicable statutes.

17. Defendant Omar Kariuki is the Head of U.S. Emerging Markets and Investment Grade Fixed Income Sales at SIS. At all relevant times, Defendant Kariuki has met the definition of an "employer" of Plaintiff under all applicable statutes.

## FACTUAL ALLEGATIONS

### I. Background

18. McKenna is an accomplished financial services professional. In 2002, she earned a degree in Finance from Boston University. Immediately thereafter, McKenna embarked on an extraordinary career at several leading institutions, including Royal Bank of Canada, ING Financial and National Bank of Canada where she prospered.

19. In 2018, Santander recruited and ultimately hired McKenna as Senior Vice President of Sales. At the time, she had no children.

20. Not surprisingly, McKenna excelled at Santander.

21. In 2018, for example, McKenna performed well during the rebuild of the Bank's high-grade sales team.

22. Similarly, in 2019, McKenna met her goals of increasing revenues by secondary trading and streamlining all the primary issuance orders for both high grade and emerging markets products.

23. McKenna's extraordinary success continued into 2020 when, for example, she generated more production with Vanguard (an important Santander client) in the first six months than her predecessors (two men) generated for the entirety of 2019.

24. She was also able to engage an emerging markets client, MunichRE, a first for Santander. Other Santander employees – mostly men – previously failed to accomplish this goal.

## II. McKenna's First Pregnancy

25. McKenna's accomplishments were remarkable given that she has been repeatedly discriminated against by the Bank.

26. In late 2018, McKenna told her then-supervisor Bill Garvey (Managing Director, Head of Investment Grade Sales and Trading at SIS) that she was pregnant with her first child.

27. Unfortunately, what should have been a happy time for McKenna turned hazardous as she developed serious medical complications rendering her disabled.

28. In early 2019, McKenna's doctor ordered that she remain at home for the remainder of her term.

29. Despite her condition, McKenna could still perform the essential functions of her job remotely, including all daily sales activities through Bloomberg and Santander's e-mail system. She therefore requested permission to work from home as an accommodation, which Garvey granted beginning in January 2019.

30. For the majority of the next two months, January and February 2019, McKenna continued her outstanding performance while working remotely.

31. Nonetheless, McKenna faced an almost immediate backlash.

32. In February 2019, Santander cut McKenna's 2018 bonus by $30,000 (to $170,000).

33. Prior to McKenna's pregnancy announcement and accommodation request, Santander promised in writing that McKenna would be eligible to receive a $200,000 annual bonus. Indeed, at the time McKenna discussed the offer letter with Garvey – before she was pregnant – Garvey assured McKenna that the technical language in the proposal describing the bonus as "discretionary" was required but that, in fact, McKenna would receive the full amount for 2018.

34. Things only got worse for McKenna.

35. On March 8, 2019, Garvey inexplicably rescinded her accommodation. Initially, Garvey provided no reason for the rescission.

36. Eventually, after McKenna pressed for an explanation given her doctor's advice to stay off her feet, Garvey cited a general "compliance" reason. In fact, however, there was no compliance issue; all of McKenna's work occurred using an authorized Bloomberg terminal.

37. On March 18, 2019, Defendant Kariuki replaced Garvey as McKenna's supervisor.

38. Defendant Kariuki threatened McKenna that Santander would fire her if she attempted to work from home.

39. Rather than accommodate McKenna by allowing her to work from home, Santander sought to push her out.

40. Pregnant with her first child and the threat of losing her job hanging over her, McKenna begrudgingly agreed to work in the office.

41. McKenna still sought lesser accommodations from Santander that were all refused.

42. After rescinding the work from home arrangement, refusing to allow McKenna a part-time work from home arrangement or even providing or reimbursing her transportation, Santander HR suggested that McKenna not work by using her vacation days.

43. She therefore had no choice but to travel from Westchester to New York City every day for work, placing her and her unborn child at risk.

44. Indeed, between January 2019 and May 2019, McKenna was hospitalized seven times.

45. On May 6, 2019, McKenna gave birth to her first child almost a month prematurely.

## III. McKenna's Maternity Leave

46. McKenna was on job-protected maternity leave from May 6, 2019, until August 12, 2019.

47. When McKenna resumed work, Santander refused to return all her accounts. With one exception, McKenna could no longer service clients in Chicago (her pre-maternity leave region) with whom she had established significant relationships. Santander gifted those

accounts to Jeff Barker – a man – while McKenna was away on leave.

48. Rather, McKenna would have to start over with new accounts. Notwithstanding this hardship, McKenna eventually grew these new accounts, including Vanguard, where McKenna was able to earn more in the first six months of 2020 than her two male predecessors during an entire calendar year.

49. In March 2019, Santander merged McKenna's existing group (high grade sales). with the emerging markets team, under the supervision of Defendant Kariuki.

50. Though the teams within the newly-formed group remained distinct, over time beginning in March 2019, McKenna broadened her portfolio by adding a considerable number of emerging markets clients.

51. Once again, despite McKenna's excellent work, Santander cut McKenna's annual bonus.

52. In February 2020, Santander paid McKenna $5,000 less (only $165,000) than the year before ($35,000 less than promised in McKenna's offer letter).

53. According to Defendant Kariuki, McKenna was "lucky" to receive even her diminished bonus because, according to him, she did not work as much due to her pregnancy.

## IV. Santander Fires McKenna

54. Defendant Kariuki remained hostile to McKenna's status as a mother.

55. For example, in March 2020, Santander accommodated all of McKenna's team members by permitting them to work remotely during the COVID-19 pandemic, something the Bank refused to do for McKenna during her first high-risk pregnancy.

56. During this time, McKenna asked for one-on-one meetings with Defendant Kariuki, who refused to follow up with a phone call.

57. In or around the end of August or beginning of September 2020, McKenna disclosed to HR her second pregnancy and her doctor's recommendation not to return to the office due to her high-risk pregnancy status.

58. On or about September 17, 2020, in preparation for a return to the office, Defendant Kariuki suddenly pressed McKenna about whether she had childcare.

59. Defendant Kariuki obviously presumed that McKenna – a mother with a small child and another on the way – was either not working while away from the office or not working as hard as her male counterparts.

60. Upon information and belief, McKenna performed better than some of her male co-workers, including engaging several new emerging market accounts in August 2020 while working remotely.

61. On or about October 19, 2020, McKenna discussed her second pregnancy with Defendant Kariuki.

62. Moreover, because she was once again considered high-risk, McKenna requested to continue working from home as an accommodation.

63. Indeed, McKenna had already been successfully performing the essential functions of her job remotely since March 2020. Her request to continue doing so for health reasons was entirely reasonable.

64. Only 18 days thereafter, Santander fired McKenna as part of a purported reduction in force.

65. In fact, Santander's decision to fire McKenna was unlawful.

66. Inexplicably, the Bank chose to keep one of McKenna's male coworkers, who was not only less qualified but also had significantly underperformed McKenna, generating

approximately $1 million less than McKenna in sales credits at the time she was notified of her dismissal.

67. Even more remarkably, the day before Santander fired McKenna it welcomed a new hire into Kariuki's group - a man who did not even have the necessary licenses to perform the job.

**FIRST CAUSE OF ACTION**
**(Interference and Retaliation under the FMLA)**
***Against All Defendants***

68. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

69. At all times relevant herein, Plaintiff was an "eligible employee" within the meaning of the FMLA. Similarly, Defendants were and are each a "covered employer" within the meaning of the FMLA.

70. By the actions described above, among others, Defendants interfered with Plaintiff's rights under the FMLA and retaliated against Plaintiff for exercising those rights.

71. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

72. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of compensatory damages and other relief.

73. Defendants' unlawful and discriminatory actions constitute reckless intentional, malicious, willful and wanton violations of the FMLA for which Plaintiff is entitled to an award of liquidated damages.

**SECOND CAUSE OF ACTION**
**(Discrimination in Violation of Executive Law)**
***Against All Defendants***

74. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

75. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her sex, disability, pregnancy-related condition and familial status in violation of the Executive Law.

76. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

77. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

78. Defendants committed these unlawful acts with willful negligence, or recklessness, or a conscious disregard of Plaintiff's rights for which Plaintiff is entitled to an award of punitive damages.

**THIRD CAUSE OF ACTION**
**(Retaliation in Violation of Executive Law)**
***Against All Defendants***

79. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

80. By the actions described above, among others, Defendants retaliated against Plaintiff in violation of the Executive Law.

81. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

82. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

83. Defendants committed these unlawful acts with willful negligence, or recklessness, or a conscious disregard of Plaintiff's rights for which Plaintiff is entitled to an award of punitive damages.

**FOURTH CAUSE OF ACTION**
**(Aiding and Abetting in Violation of the Executive Law)**
***Against Defendant Kariuki***

84. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

85. Defendant Kariuki aided, abetted, incited, compelled and/or coerced discrimination and retaliation against Plaintiff in violation of the Executive Law.

86. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

87. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

88. Defendant Kariuki committed these unlawful acts with willful negligence, or recklessness, or a conscious disregard of Plaintiff's rights for which Plaintiff is entitled to an award of punitive damages.

**FIFTH CAUSE OF ACTION**
**(Discrimination in Violation of City Law)**
***Against All Defendants***

89. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

90. By the actions described above, among others, Defendants discriminated against Plaintiff on the basis of her gender, disability, caregiver status and sexual and reproductive health decisions in violation of the City Law.

91. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

92. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

93. Defendants committed these unlawful acts with willful negligence, or recklessness, or a conscious disregard of the Plaintiff's rights for which Plaintiff is entitled to an award of punitive damages.

**SIXTH CAUSE OF ACTION**
**(Retaliation in Violation of City Law)**
***Against All Defendants***

94. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

95. By the actions described above, among others, Defendants retaliated against Plaintiff in violation of the City Law.

96. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

97. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

98. Defendants committed these unlawful acts with willful negligence, or recklessness, or a conscious disregard of Plaintiff's rights for which Plaintiff is entitled to an award of punitive damages.

**SEVENTH CAUSE OF ACTION**
**(Aiding and Abetting in Violation of the City Law)**
***Against Defendant Kariuki***

99. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

100. Defendant Kariuki aided, abetted, incited, compelled and/or coerced the discrimination and retaliation against Plaintiff in violation of the City Law.

101. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

102. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered and continues to suffer, mental anguish and emotional distress, for which she is entitled to an award of damages.

103. Defendant Kariuki committed these unlawful acts with willful negligence, or recklessness, or a conscious disregard of Plaintiff's rights for which Plaintiff is entitled to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the Court enter judgment in her favor and against Defendants, containing the following relief:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B. An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages;

C. An award of damages in an amount to be determined at trial, plus prejudgment

interest, to compensate Plaintiff for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her mental anguish and emotional distress, humiliation, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical and mental injuries;

D. An award of damages to be determined at trial, plus prejudgment interest, to compensate Plaintiff for harm to her professional and personal reputations and loss of career fulfillment;

E. An award of punitive damages;

F. An award of liquidated damages;

G. An award of costs that Plaintiff has incurred in this action, as well as Plaintiff's reasonable attorneys' fees to the fullest extent permitted by law; and

H. Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: February 3, 2021
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: ______________________
Valdi Licul
Sarah J. Arena

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
sarena@wigdorlaw.com

*Counsel for Plaintiff*